```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT

SCHATZILEIN BUCK,                :
                                 :
        Plaintiff,                :
                                 :
        v.                       :    Case No. 2:14-cv-157
                                 :
NORTHERN NEW ENGLAND             :    (Lead Case)
TELEPHONE OPERATIONS, LLC,       :
                                 :
        Defendant.               :

        and

YOLANDA BLAIR,                   :
                                 :
        Plaintiff,                :
                                 :
        v.                       :    Case No. 2:14-cv-158
                                 :
NORTHERN NEW ENGLAND             :
TELEPHONE OPERATIONS, LLC,       :
                                 :
        Defendant.               :
```

## **OPINION AND ORDER**

Plaintiffs Schatzilein Buck and Yolanda Blair bring this action claiming injuries resulting from a 2011 automobile accident. The accident occurred when the sedan driven by Ms. Buck collided with a telephone company utility truck. Plaintiffs claim that the driver of the truck was at fault, and that Defendant is liable for the driver's negligence.

The Court held a three-day jury trial in November 2016. The jury found in favor of the Defendant, concluding that Ms. Buck and Ms. Blair had failed to prove negligence. Plaintiffs now move the Court for a new trial. For the reasons set forth below,

their motion is **denied**.

## I. Legal Standard

The decision to grant a motion for new trial under Federal Rule of Civil Procedure 59(a) rests within the sound discretion of the district court. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).[1] "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). While a court may weigh the relevant evidence and order a new trial even if the jury's verdict is supported by substantial evidence, "it is well settled that a trial judge's disagreement with the jury's verdict is not sufficient reason to grant a new trial." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983) (citations omitted). A motion for new trial should not be granted unless the Court "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Kosmynka v.*

---

[1] It is not clear in diversity cases whether a federal court must apply a state or federal standard to motions filed under Rule 59(a). *See Taylor v. Stratton Corp.*, 2012 WL 928407, at *1 (D. Vt. Mar. 19, 2012), aff'd, 514 F. App'x 68 (2d Cir. 2013). "On Rule 59(a) motions, Vermont state courts are limited to viewing the evidence 'in the light most favorable to the jury's verdict' and may overturn the verdict only if it is unsupported by the evidence." *Id.* (quoting *Shaw v. Barnes*, 693 A.2d 710, 711 (Vt. 1997)). "[C]ourts applying the federal standard have the broader power to re-weigh the evidence and may overturn verdicts that are supported by substantial evidence. *Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003)." *Id.* In this case, the Court need not determine which to apply as it would find a new trial unwarranted under either standard. Its analysis will therefore follow the broader, federal standard.

*Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (citations omitted); *see also DLC Mgmt. Corp.*, 163 F.3d at 134 (the court should only grant such a motion when the jury's verdict is "egregious") (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)).

**II. The Jury's Conclusion as to Negligence**

Plaintiffs first contend that the jury reached the wrong result on the question of negligence. As noted above, this case centers on an automobile accident. On August 2, 2011, Ms. Buck was driving a 2000 Mitsubishi sedan on Route 5 in Irasburg, Vermont. The relevant portion of Route 5 runs north-south. Ms. Buck and Ms. Blair, the car's passenger, were traveling south. James Baker, driving a 2008 Ford bucket utility truck, testified that he drove across the northbound lane of Route 5 safely, and did not see Ms. Buck's vehicle until shortly before she collided with his truck. The collision occurred as Mr. Baker was driving the truck across the southbound lane.

Plaintiffs submit that Mr. Baker had a clear view of the roadway before he entered the intersection, should have seen Ms. Buck's car approaching from a distance, and that his failure to yield was the proximate cause of the accident. In support of their claim, they cite photographs of the accident scene, a video simulation, and testimony from Defendant's expert. They also refer to the Court's jury instruction which, consistent with

3

Vermont law, stated that a driver is deemed to be aware of objects in plain view and must use reasonable diligence.

Defendants cite Mr. Baker's trial testimony, in which he explained that at the time he entered the intersection he did not see any cars on Route 5. Specifically, he testified that after coming to a stop before entering the intersection, he looked left, right, and left again, then proceeded into the intersection a bit further in order to get a better view. He again looked left, right, and left, before crossing the northbound portion of Route 5.

Mr. Baker testified that as he was crossing the northbound lanes, he looked right again to see if any cars were approaching from the south. He testified that he did so "about the time" his truck reached the median that divided the north and southbound lanes. ECF No. 98-1 at 6. He did not stop at the median, but was "continually moving." *Id.* He testified as follows on direct examination:

> Q. Okay. And when you looked to the right -- well, first of all, when you looked before you started moving into the northbound lanes was there anything at all in that section of Route 5 headed south that was visible to you? Was there any car there whatsoever?
>
> A. No.
>
> Q. You're positive of that?
>
> A. Yes, sir.
>
> Q. So when you looked again to the right after you crossed the northbound lanes and just before you headed to

4

> the southbound lanes when you looked to your right again
> what did you see?
>
> A. When I got to the intersection I did see a vehicle
> coming towards me.
>
> Q. Okay. And where was the vehicle located when
> you first saw it?
>
> A. I can't say exactly. I believe it was -- I
> don't know footage wise where exactly it was.
>
> Q. Well tell me with regard to the median. Was it
> north of the median or in the median?
>
> A. I would say it was probably north of the median.
>
> Q. Okay. Do you know for sure?
>
> A. I can't say a hundred percent sure, but I would
> say it was in that vicinity right at the median strip.
>
> Q. And could you get a sense of how fast it was
> going?
>
> A. It looked like it was traveling a good rate of
> speed. I couldn't tell you how fast.

*Id.* at 6-7. Mr. Baker testified that if he had applied his brakes at that moment, his truck would have stopped in the middle of the road. He therefore applied the gas in an effort to make it through the intersection without being struck by the oncoming car.

Defendant's expert, Kenna Johnson, testified that Ms. Buck had to have been driving in excess of 60 miles per hour when she reached the beginning of the median – above the posted speed limit, and approximately 280 feet from the intersection and Mr. Baker's truck. Based upon these numbers, Plaintiffs conclude

5

that Ms. Buck's vehicle was visible to Mr. Baker "for three seconds and before he entered their lane of travel." ECF No. 99 at 2. They also contend that Mr. Baker should have been able to see Ms. Buck approaching from 800 feet, or over eight seconds, away, and was therefore negligent. Defendant counters that, as Mr. Baker testified, Ms. Buck's vehicle was not yet in sight when the bucket truck began crossing Route 5.

The Court instructed the jury that a driver "has a duty to maintain a proper lookout for persons on the highway and use reasonable diligence to avoid injuries to himself and others. In this regard, a driver is deemed to be aware of objects that are in plain view." ECF No. 93 at 9. Plaintiffs argue that because Mr. Baker must have had a clear view of their vehicle before he entered the intersection, he breached his duty of care by "violating their right of way." ECF No. 97 at 4. They rely, in part, upon *Rich v. Hall*, 107 Vt. 455, 461 (1935), in which the Vermont Supreme Court held that where a driver approaching from the "disfavored direction" fails to yield the right of way, and such failure is a proximate cause of the accident, "he is guilty of actionable negligence."

*Rich* also held that a driver *may* enter an intersection if there are no vehicles "approaching the intersection within such distance as reasonably to indicate danger of interference or collision." 107 Vt. at 460. Indeed, Vermont law imposes a

statutory duty to yield to any vehicle "approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection." 23 V.S.A. § 1048(b). Mr. Baker testified that Ms. Buck's vehicle was not visible when he chose to cross the northbound lane. He also testified that Ms. Buck was traveling at "a good rate of speed." Defendant's expert concurred that Plaintiffs had to have been traveling in excess of 60 miles per hour just prior to the accident. If the jury accepted Mr. Baker's statements as true, and Plaintiffs' other evidence did not persuade the jury otherwise, it was reasonable for the jury to conclude that he was not negligent as he proceeded through the intersection.

The current question before the Court is whether the jury's verdict was "seriously erroneous" or resulted in a "miscarriage of justice." *Kosmynka*, 462 F.3d at 82. The verdict was based, in part, upon the jury's view of Mr. Baker's credibility; an assessment that this Court will not second-guess. *See DLM Mgmt. Corp.*, 163 F.3d at 133 ("a court should rarely disturb a jury's evaluation of a witness's credibility"); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992) ("Where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."). Given Mr. Baker's testimony about his actions as he approached and proceeded

7

through the intersection, the expert testimony as to Ms. Buck's likely speed, and Plaintiffs' own account of their position as Mr. Baker crossed the northbound lanes, the Court finds insufficient grounds to overturn the jury's conclusion and grant a new trial. Plaintiffs' motion on the basis of the jury's finding is therefore **denied**.

### III. The Court's Conduct

Plaintiffs' second argument asserts that the Court prejudiced counsel's cross-examination of Mr. Baker. They contend that in the course of that cross-examination, counsel was prevented from establishing two points. First, counsel wanted to highlight portions of Mr. Baker's prior testimony in which he stated that he did not see Ms. Buck's car. ECF No. 97 at 6. Second, counsel sought to establish that Mr. Baker's testimony about what he saw prior to the collision had changed over time. In establishing both points, counsel sought to introduce portions of Mr. Baker's prior testimony during a Vermont Traffic Court hearing.

At trial, Plaintiffs' counsel asked Mr. Baker if he saw Ms. Buck's car as it was coming toward him. Mr. Baker responded that he "did see the car." ECF No. 98-1 at 27. Plaintiffs' counsel next established that at the Traffic Court hearing, Mr. Baker testified: "'I did not see the other vehicle.'" *Id.* at 34. At trial, counsel next asked Mr. Baker if something was blocking his

8

view, such as a mailbox or sign. *Id.* Mr. Baker answered, "No,"
at which point counsel again asked him to turn to the Traffic
Court testimony. *Id.* at 34. Defendant's counsel objected, and
the parties approached the bench. The following discussion
ensued among Attorney Durrell (Plaintiffs' counsel), Attorney
Ryan (for Defendant), and the Court:

> MR. DURRELL: He says I didn't see the other vehicle.
>
> THE COURT: That's fine. He's already said that. I thought you asked him a question about whether there may have been an obstruction in his view and he said no.
>
> MR. DURRELL: In this proceeding he says repeatedly I didn't see the other vehicle.
>
> THE COURT: That's fine, but you have already got that established. You don't have to keep going over that. I thought you laid the foundation for the question that he was going to say he saw -- he didn't see the car because there was an obstruction, but that's not what he's testifying to. It's just he's going to say again he didn't see the vehicle. How many times does he say that?
>
> MR. DURRELL: Two more times.
>
> THE COURT: Okay. Response. Can I see it?
>
> MR. RYAN: He's taking things out of context . . . .
>
> THE COURT: Well all right. This is the more thorough description of what he was testifying to and it reads as follows:
>
>> "I certainly did not see the other vehicle. I did come to a stop. I proceeded through the first section then on to the second section. Looking again at the last moment I did see the other vehicle approaching me. Hit my gas as quickly as I could. Unfortunately I don't believe she saw me until the last second,"
>
> and then it goes into what he expected that she did, but at

least what he's saying that he did not see the other vehicle. There's reference here clearly to the context. He didn't see the other vehicle until he came to the second look and then he saw the vehicle and that's consistent with his testimony all along. The problem I think now that I read this in context is that you're taking this I didn't see the vehicle and you're trying to make an argument that he never saw the vehicle at all, which is not what he's saying here at all. He's saying he saw the vehicle after the second stop which is exactly what he testified to earlier. So I let you put in I didn't see the vehicle, but that's not an accurate representation of what he actually said in this hearing. So with that I'm going to exclude any more reference to I didn't see the vehicle because in the context he is saying he did see the vehicle after the second look and that's what he says today.

. . .

MR. DURRELL: Judge, I'm just trying to say that car crashes, motorcycles crashes, happen all the time because they don't see the other vehicle. So this is a substantive point he did not see the other vehicle.

THE COURT: How do you get that from this paragraph?

MR. DURRELL: I certainly did not see the other vehicle.

THE COURT: "Yeah I came to a stop. I proceeded through the first intersection looking again and at the last moment I did see the other vehicle approaching."

MR. DURRELL: But the other vehicle was there. He didn't see it.

THE COURT: No. The other vehicle -- this is crazy. This is just crazy. I mean in the context of what he's saying here he didn't see the vehicle at the very beginning. At the last time when he did the second look both to the right and left he saw the vehicle approaches him which is what he says here. So I don't think that you can pick apart his statement out of context. You have got the first statement there. Let's leave it at that. Mr. Ryan can respond to that, but I think it's inappropriate to take this paragraph, take out a sentence when in fact that totally misrepresents the context of what he said.

*Id.* at 36-39.[2]

Plaintiffs' counsel now submits that he should have been able to introduce several additional portions of prior testimony in which Mr. Baker stated that he did not see the oncoming vehicle. Counsel also contends that he should have been "allowed to show the jury that [Mr. Baker was] lying, going blind, or crazy." ECF No. 97 at 9. Aside from informing the Court that Mr. Baker had stated multiple times in testimony that he did not see Ms. Buck's approaching car, no such proffers or arguments were made at trial.

Counsel also objects to the Court's limitation of his time to cross-examine Mr. Baker. When the Court asked counsel how much cross-examination remained, counsel responded, "Not much." The Court then followed up: "Not much, is it five minutes?" Counsel responded: "If he stops objecting." ECF No. 98-1 at 31. Based upon this representation, the Court decided to proceed with the cross-examination rather than move to another witness whose availability was limited, and allowed counsel five minutes. Counsel proceeded with his questioning, concluded by stating "Nothing further." *Id.* at 42.

Defendants argue that counsel's failure to make timely

---

[2] Defendant's counsel asked the Court to instruct the jury to disregard Mr. Baker's prior testimony about not seeing the approaching vehicle. The Court did not provide such an instruction, reasoning that counsel would clarify the issue on re-direct. *Id.* at 37-38.

objections renders Plaintiffs' arguments waived.  *See, e.g., Life Plus Int'l v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003) ("To preserve this issue for our review, a party must lodge a timely objection to the time limits and must make a proffer of evidence that was excluded for lack of sufficient time."); *Evans v. Port Auth. of N.Y. & New Jersey*, 246 F. Supp. 2d 343, 351 (S.D.N.Y. 2003) ("in order to prevail on a claim that a time limit was too short, a party must have come forward with an offer of proof showing how its presentation would be curtailed by it and must demonstrate prejudice"); *Bank of China v. NBM L.L.C.*, 2002 WL 31027551, at *3 (S.D.N.Y. Sept. 11, 2002) ("[A]t no point did defendants identify any admissible, relevant, evidence that they were unable to offer because of the time limits set by the Court.").  Even assuming timely objections, however, the Court sees no basis for granting a new trial.

First, a trial court has broad discretion over the length and scope of cross-examination.  *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (holding that a district court has "wide latitude . . . to impose reasonable limits on . . . cross-examination"); *United States v. Wilkerson*, 361 F.3d 717, 734 (2d Cir. 2004); *United States v. Kahn*, 472 F.2d 272, 281 (2d Cir. 1973).  Moreover, "in order to prevail on a claim that a time limit was too short, a party must have come forward with an offer of proof showing how its presentation would be curtailed by

12

[the time limitation] and must demonstrate prejudice." *Evans v. Port Auth. of N.Y. & N.J.*, 246 F. Supp. 2d 343, 351 & n.49 (S.D.N.Y. 2003).

Here, the Court inquired as to how much time counsel would need to conclude his cross-examination, and counsel informed the Court that he was nearly finished. When the Court asked if five minutes would be sufficient, counsel agreed that it would be so long as defense counsel did not pose objections. The Court therefore allowed counsel five minutes. Although defense counsel did continue to object, it is not clear from the record how much time was actually allowed. It is plain, however, that counsel concluded his examination without any warning or prompting from the Court.

With respect to counsel's contention that he was barred from introducing important evidence, the Court finds that such evidence would have been largely redundant. While counsel sought to introduce Mr. Baker's prior testimony that he did not see Ms. Buck's vehicle, the Court had already allowed such prior testimony into evidence. Although the Court subsequently discovered that the statement had been taken out of context, it allowed the statement to remain in evidence. Additional statements to the same effect were, at best, unnecessary, and counsel's alleged inability to enter them into evidence was not prejudicial. *See Gasperini v. Ctr. for Humanities*, 149 F.3d 137,

13

143 (2d Cir. 1998) (holding that the district court "acted within proper bounds in deciding to limit further exploration of [an] issue in order to avoid wasting time"). The motion for a new trial based upon the Court's conduct during trial is therefore **denied**.

**IV. Conclusion**

For the reasons set forth above, Plaintiffs' motion for a new trial is **denied**.

DATED at Burlington, in the District of Vermont, this 17th day of April, 2017.

/s/ William K. Sessions III  
William K. Sessions III  
District Court Judge